IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 10, 2021

**TERRY RAY BAKER v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Montgomery County**
**No. CC-2016-CR-1045        Jill Bartee Ayers, Judge**
_____

**No. M2020-00486-CCA-R3-PC**
_____

The Petitioner, Terry Ray Baker, pleaded guilty to aggravated robbery, and the trial court sentenced him to the agreed upon sentence of fifteen years of incarceration, to be served at 100%. The Petitioner filed a petition for post-conviction relief, which the post-conviction court dismissed after a hearing. On appeal, the Petitioner contends that his guilty plea was not knowingly and voluntarily entered because at the time he entered his plea he was confused about whether his sentence would be served at 100% or 45%, and his counsel did not give him time to consider his options. After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ALAN E. GLENN, J., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Terry Ray Baker.

Herbert H. Slatery III, Attorney General and Reporter; Edwin Alan Groves, Jr., Assistant Attorney General; John W. Carney, Jr., District Attorney General; and Robert J. Nash, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts**

**A. Guilty Plea**

This case arises from the Petitioner's unlawful taking of a vehicle with the use of violence. For these events, the Montgomery County grand jury indicted the Petitioner for carjacking, unlawful possession of a firearm with a violent felony conviction, aggravated assault, aggravated robbery, and theft of property valued at more than $10,000.[1] The Petitioner filed a motion to suppress evidence and a motion *in limine* regarding statements he made to police. The State filed a notice to seek to have the Petitioner sentenced as a career offender and also a motion to determine the admissibility of the Petitioner's extensive prior criminal history, which included three Class B felony aggravated robbery convictions; two Class C felony aggravated assault convictions; two Class C felony aggravated burglary convictions; and one Class D felony theft conviction. The State noted that, on May 26, 2000, the Petitioner had been sentenced to twenty-one years of confinement for his prior convictions, and the Petitioner had been paroled in September 2015. The carjacking that is the subject of this appeal occurred on June 23, 2016.

On December 7, 2018, at the hearing on the motions filed by the parties, the parties informed the trial court that they had reached a settlement in this case. The Petitioner's counsel ("Counsel") informed the court that the parties had agreed that the Petitioner would enter a plea of guilty to aggravated robbery in exchange for a fifteen-year sentence, to be served at 100%, and the State's dismissal of all other charges against him. The Petitioner would receive pre-trial jail credits for 896 days. The trial court confirmed that the sentence qualified for 100% service, not the standard 85%, because the Petitioner had prior aggravated robbery convictions.

The State then gave the following recount of the facts it would have presented had the case gone to trial:

> On June 23rd of 2016, [the victim] was 20 years old. She was the recent new owner of a pre-owned 2013 Kia Rio.
>
> She worked at the Ruby Tuesday on Madison Street. She was driving around after her shift around 9:30 to 10:00, before she went home, where she lived with her parents.
>
> She stopped at the American Carwash on Fort Campbell Boulevard. Pulled into the carwash bay to clean out her car that she had just purchased . . . .
>
> When she got out of the car, it turns out these [d]efendants she described as an older man with a tattoo on his neck and a younger gentleman, approached her, asking if she had seen a dog in the area. She said, "No."

---

[1] The indictments are not included in the record, and the facts about the Petitioner's indictment are taken from the parties' filings in the record.

- 2 -

[The Petitioner] produced a hand gun from his waistband, the older man did, and said, "Move away from the vehicle."

She said, "What?"

He said, "Move away from the car."

She backed up. [The Petitioner] got in her car and took off. Her cell phone was in the vehicle, along with her other belongings.

She went to Advance Financial, which is right next door. Used . . . someone's phone, called 9-1-1.

At night she was shown two lineups, but failed to be able to identify anyone. [The Petitioner] was not in either one of those.

The next day she was shown three lineups. [The Petitioner] was presented, due to his vicinity, that he lived in the area. And based on law enforcement knowing [the Petitioner's] history, they placed him in the . . . last lineup.

[The victim] identified [the Petitioner] positively as the one who brandished the weapon and took . . . her car the night before.

The vehicle was located in Cadiz, Kentucky, . . . near the residence of an acquaintance of [the Petitioner]. Also, through a consent search of [the Petitioner's] cell phone, there was contact between [the Petitioner] and this other acquaintance that . . . live[d] near where the vehicle was located.

There were numerous Internet searches that [were] located on [the Petitioner's] phone that were of carjacking[s]; June 23rd, 2016, numerous searches of that; numerous searches of stolen vehicle searches; outstanding arrest warrant searches on his phone.

The trial court then spoke with the Petitioner, asking him if he felt he had "plenty of time to review everything with [Counsel]." The Petitioner responded that he had plenty of time and also understood everything. The trial court ensured that the Petitioner understood that he was waiving his right to a trial, and each of the rights that went along with the right to a trial, including the right to appeal the verdict. Upon the Petitioner's acknowledgment of understanding, the trial court entered the plea and sentence as agreed to by the parties. The judgments of conviction are not included in the record but the parties aver they were entered the same day as the hearing, December 7, 2018.

## B. Post-Conviction

On August 1, 2019, the Petitioner filed a *pro se* "Post Conviction Motion to Withdrawl [sic] Guilty Plea." He asked the trial court to withdraw his guilty plea based upon ineffective assistance of counsel, who he alleged informed him that, if he proceeded to trial, he would be found guilty based on his prior convictions alone. Counsel, he alleged, also informed him that he would receive thirty years, to be served at 100%, and never informed him that there would be a hearing to decide if his prior record would be admissible.

The trial court interpreted the filing as a petition for post-conviction relief, and it appointed the Petitioner an attorney, who amended his petition. The amendment averred that Counsel was ineffective for failing to attempt to suppress or limit the State's use of the Petitioner's prior convictions, whether or not the Petitioner chose to testify.

The post-conviction court held a hearing on the petition, during which the parties presented the following evidence: The Petitioner testified that Counsel represented him on charges stemming from this carjacking. He said that he and Counsel had met only twice for no more than thirty minutes each time and that both times were in jail because he was incarcerated. The Petitioner testified that, on the day he entered his guilty plea, he understood that he was entering his plea in exchange for a sentence of fifteen years at 100%. He said, however, that on the "paper" he signed the box was checked for 45%.

The Petitioner testified that he told Counsel that he wanted to "wait" before entering his guilty plea. He said that Counsel had told him he could be found guilty based on his prior criminal history alone, and the Petitioner was not aware that he could have a hearing about whether his prior convictions were admissible. He said that, had he known that his record could potentially be suppressed if he did not testify, he would not have entered a plea of guilty.

During cross-examination, the Petitioner agreed that the victim had identified him from a photographic lineup. He agreed that the search history on his phone showed that he had searched information related to carjackings.

The Petitioner agreed that he and Counsel met twice in person and also a "couple" of times by video monitor. He also agreed that the State had offered him a plea agreement for his guilty plea in exchange for a twenty-five-year sentence to be served at 45%.

The Petitioner said that all his prior convictions stemmed from one incident in 1999. He served seventeen years of that sentence and then was paroled nine months before he was alleged to have committed this offense.

The Petitioner agreed that, before offering his plea, he had seen the State's notice to seek enhanced punishment. He was also aware before his plea that Counsel had filed a motion to determine the admissibility of the Petitioner's prior convictions. The Petitioner said that the reason he pleaded guilty was because he felt "threatened" with thirty years at 100% if he did not take the fifteen-year plea agreement. He could not say who "threatened" him but agreed that Counsel told him that the "only way" was to strike the motions and take the plea agreement.

Counsel testified that said that he met with the Petitioner in jail on eight occasions. He was uncertain which of those meetings were in person and which were by video conferencing. They also had three court appearances together, in addition to the guilty plea hearing. Counsel said the Petitioner gave him the Petitioner's wife's name and a telephone number to call as a witness, but she would not answer his repeated phone calls.

Counsel said that he never told the Petitioner "You can't win if you go to trial," but he likely told him that the prospect of winning was bleak. Counsel did not recall the Petitioner asking for more time to think about the plea agreement.

Counsel said that he and the Petitioner met on December 5, 2019, and during this meeting the Petitioner asked that Counsel propose to the State the fifteen-year plea agreement. Counsel said he went from that jail visit to the District Attorney's office and spoke with the prosecutor to make the offer. The prosecutor wanted to speak with the alleged victim and called Counsel later to confirm that the State had accepted the Petitioner's offer. The Petitioner pleaded guilty two days later. Counsel maintained that, considering the evidence, pleading guilty was in the Petitioner's best interest.

During cross-examination, Counsel testified that the State's first offer was twenty-five years to be served at 45%. The Petitioner did not like those terms because he was concerned that he would not make parole if he was incarcerated. The Petitioner told him that he did not want a longer sentence with a shorter percentage service of that sentence; instead, he wanted a determinant number of years.

Counsel said that he discussed with the Petitioner the State's motion to seek enhanced punishment and also Counsel's motion about the Petitioner's prior convictions both in a letter and in a face-to-face meeting before the guilty plea hearing. Counsel discussed with the Petitioner his potential exposure if convicted and sentenced as a career offender. Counsel agreed that he had filed a motion *in limine* and a motion to suppress in this case. Counsel said that the Petitioner did not indicate any reservations about pleading guilty.

During redirect examination, Counsel testified that a twenty-five-year sentence at 45% only required service of eleven-and-a-half years. The Petitioner, however, was concerned he would not be released on parole.

The post-conviction court denied the Petitioner's petition, making the following factual findings:

> Petitioner claims that [Counsel] rendered ineffective assistance of counsel by failing to attempt to suppress or limit the State's use of [the] [P]etitioner's prior convictions, and by failing to fully and clearly explain options such as potential limitation of the reference to past criminal convictions by the State, thereby rendering [the] [P]etitioner's guilty plea unknowing and involuntary.

> Based on the testimony, the Court concludes that [C]ounsel did not render ineffective assistance in this case. He met with [the] [P]etitioner, discussed the case with him, took him an offer from the State, and then took [the] [P]etitioner's counter-offer back to the State. He filed pre-trial motions and was prepared to argue the motion regarding [the] [P]etitioner's prior convictions on the morning [the] [P]etitioner agreed to enter his plea. Further, at the plea submission hearing, the [P]etitioner admitted that he understood the terms of the pela agreement, understood it was a sentence of 15 years to be served at 100%, was aware of the motions west for the day the plea was entered, and was aware of the scheduled trial date, and he desired to move forward to enter the guilty plea. He stated under oath that he had reviewed the offer with his attorney and had no questions.

> The Court credits the testimony of [Counsel] in that he reviewed the pending motions with [the] [P]etitioner and that [the] [P]etitioner did not ask for more time or have any hesitation in entering the guilty plea and the sentence [the] [P]etitioner had proposed to the State. There is no evidence to support the [P]etitioner's assertion that his plea agreement was not entered knowingly and voluntarily. The [P]etitioner is therefore not entitled to post-conviction relief.

(footnote omitted). It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that Counsel was ineffective for not allowing him extra time to consider the offered plea agreement and for not informing him that his prior criminal convictions may not be admitted if he went to trial. The State counters that the Petitioner cannot prevail on appeal because the post-conviction court properly accredited Counsel's testimony about the possibility of suppressing his prior convictions and that the Petitioner did not ask for more time to consider the plea agreement. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2018). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2018). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against it. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely de novo review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim of ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking

into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). In the context of a guilty plea, as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of *Strickland*, the petitioner must show that there "is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (footnote omitted); *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997)

The post-conviction court expressly accredited Counsel's testimony that the Petitioner did not ask for more time to evaluate the plea agreement, which was one that he himself proposed to the State. The post-conviction also expressly accredited Counsel's testimony that the Petitioner was aware of the motions regarding the admissibility of his prior convictions. The Petitioner himself testified that he was aware of this motion, which inherently means that he knew there was a possibility that the motion would be granted and the prior convictions excluded. As previously stated, this court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon*, 18 S.W.3d at 156.

As such, we conclude that the evidence supports the post-conviction court's findings, and the Petitioner is not entitled to relief.

### III. Conclusion

Based on the foregoing reasoning and authorities, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE